IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL CHARLES SCHENA,<br><br>Defendants | Case No. 1:25-MJ-143<br><br>█████████ |

### DECLARATION OF JOHN P. DIXSON, DEPARTMENT OF DEFENSE (DOD)

I, John P. Dixson, hereby declare and state:

#### Background

1. I have worked in the in the national security field since 1982. Currently, I am the Director for Defense Intelligence (Counterintelligence, Law Enforcement, and Security) (DDI(CL&S)), where I serve as the principal advisor to the Under Secretary of Defense for Intelligence and Security for matters pertaining to the Defense Security Enterprise (DSE). In my capacity as DDI(CL&S) I have oversight of Department of Defense (DoD) information security programs and responsibility for leading and implementing the priorities set forth by the Secretary of Defense. My office is mandated to enable integration between the DSE and the Defense Intelligence Enterprise and between the DSE and the interagency, industry, partners, and allies. These partnerships are predicated on safe and secure communication of information from capabilities and relationships that have often required years to cultivate and refine and that have a direct impact on the national security.

2. As the DDI(CL&S), I also serve as an Original Classification Authority (OCA). In my role as an OCA, I am responsible for confirming that information is properly classified

and marked accordingly, and to classify information that may not have otherwise been reviewed for such protections. In determining the appropriate classification level for categories of national security information, I consider the damage that the unauthorized disclosure of such information would reasonably be expected to cause to national security.

3. During the course of my career, I have become familiar with Executive Order 13526 (the E.O.), which informs my OCA determinations. Pursuant to Section 1.2 of the E.O., information may be classified by an original classification authority based upon the level of damage to national security reasonably expected to result from unauthorized disclosure: CONFIDENTIAL (for damage); SECRET (for serious damage); or TOP SECRET (for exceptionally grave damage). I serve as an original classification authority on behalf of the agency in accordance with Section 1.3(3) of the E.O. and associated delegations.

## USSOUTHCOM

4. U.S. Southern Command ("USSOUTHCOM") is responsible for providing contingency planning, operations, and security cooperation in its assigned Area of Responsibility, which includes Central America, South America, and the Caribbean (except U.S. commonwealths, territories, and possessions). USSOUTHCOM is also responsible for the force protection of U.S. military resources at these locations. USSOUTHCOM is a joint command comprised of more than 1,200 military and civilian personnel representing the Army, Navy, Air Force, Marine Corps, Coast Guard, and several other federal agencies. The Military Departments provide USSOUTHCOM with subordinate component commands which, along with our Joint Special Operations component, two

Joint Task Forces, one Joint Interagency Task Force, and security cooperation organizations, perform USSOUTHCOM missions and security cooperation activities.

## USCYBERCOM

5. U.S. Cyber Command ("USCYBERCOM")'s refined priorities address global strategic challenges and enhance the command's posture in cyberspace. USCYBERCOM has three main focus areas: defending the Department of Defense Information Network (DoDIN); providing support to combatant commanders for execution of their missions around the world; and strengthening our nation's ability to withstand and respond to cyber-attacks. USCYBERCOM unifies the direction of cyberspace operations, strengthens DoD cyberspace capabilities, and integrates and bolsters DoD's cyber expertise. Like USSOUTHCOM, the Military Departments provide USCYBERCOM with subordinate component commands that bolster the abilities of the command and enable better defense and understanding of the threats to mission critical networks and infrastructure. The command also works closely with interagency and international partners in executing its critical missions.

## DoD Products at Issue

6. In this case, one USCYBERCOM and two USSOUTHCOM documents are at issue, each of which were produced by and under the control of DoD, and which I have reviewed. Experts at both Combatant Commands conducted classification reviews of their products. I find the recommendations of their reviews accurate.

7. The documents that are the subject of this declaration contain sensitive national security information and remain currently and properly classified as SECRET pursuant to the E.O.

The reason for classification is 1.4(c), intelligence activities (including covert action), intelligence sources or methods, or cryptology.

8. These products contain information obtained by U.S. intelligence officers, including indicators of their identities, and identify the missions and organizations. The products also describe the human sources who agreed to work with U.S. Intelligence to provide information that directly informs national security recommendations and determinations. When human sources are compromised, it erodes our ability to recruit sources who can provide invaluable insight into the intentions of adversaries. The Department of Defense's ability to further national security is predicated on our ability to secure information obtained from human and technical sources from exposure, so that we may ensure the reliability and future value of that source of information.

9. Aside from the overall harm done to the human intelligence enterprise, the release of the classified materials exposes collection emphasis areas for the Department of Defense and allows the adversary to craft misinformation campaigns against use. As a career counterintelligence officer, I can attest that definitively knowing an adversary's interests is invaluable, enables strategic deception efforts, and informs decision-making to mitigate vulnerabilities. These effects can last for years, particularly if the extent of a compromise is not known or understood.

10. The harms of the alleged disclosures are not yet quantifiable, but the Department's ability to conduct intelligence operations will certainly be impacted. The United States has an enduring need to meet and mitigate its most pressing national security challenges; including peer and near-peer competitors, and these criminal disclosures have undoubtedly harmed the Department of Defense's ability to do this.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 26 date of March 2025.

John P. Dixson

Director for Defense Intelligence

Counterintelligence, Law Enforcement, & Security

5